IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-466-FL

| | | |
|---|---|---|
| WALTER L. HART, IV as Guardian Ad Litem for Dominique D. Northcutt, an incompetent adult, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; EDUCATIONAL DATA SYSTEMS INCORPORATED; CAPE FEAR AVIATION MAINTENANCE, LLC, d/b/a Cape Fear Aviation; CAPE FEAR AVIATION SERVICES, LLC, d/b/a Cape Fear Aviation; CAPE FEAR AVIATION FAYETTEVILLE, LLC, d/b/a Cape Fear Aviation; ROGER DALE SMITH, individually and as owner, member, and manager of Cape Fear Aviation Fayetteville, LLC; CYNTHIA B. SMITH, individually and as owner of Cape Fear Aviation; JACOB JAKE PARSONS; SCOT SMITH, individually and as owner, member, and manager of Cape Fear Aviation Maintenance, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. | ) | |

This matter is before the court on the following motions:

1)      Plaintiff's motion to remand (DE 12);

2)      Defendant Educational Data Systems Incorporated's ("EDSI") motion to remand (DE 18);

3)      Defendant Travelers Property Casualty Company of America's ("Travelers") motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 16);

4)      Defendant Travelers's motion to realign all other parties as plaintiffs (DE 24); and

5)      Defendant Travelers's motion to dismiss defendant EDSI's counterclaim as duplicative of a complaint and counterclaim in another case also pending before this court (DE 29).

These motions have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, plaintiff's and defendant EDSI's motions to remand are denied and defendant Travelers's motions to dismiss the complaint, realign the parties, and dismiss defendant EDSI's counterclaim are granted.

## STATEMENT OF THE CASE

Plaintiff initiated this declaratory judgment action in Cumberland County Superior Court on November 5, 2021, seeking judicial determination that defendant Travelers, an insurance company, is obligated to provide coverage to defendant EDSI for damages that may be awarded in an underlying tort action pending in Cumberland County Superior Court. See Case No. 20-CVS-5121 (hereinafter, the "underlying tort action"). In the underlying tort action, plaintiff alleges that Dominique Northcutt, for whom plaintiff serves as guardian ad litem, was severely injured in an airplane crash and that each of the defendants in this declaratory judgment action are jointly and severally liable for her injuries. Plaintiff seeks costs and attorneys' fees.

Defendant Travelers removed this declaratory judgment action to this court November 11, 2021, asserting defendants Cape Fear Aviation Maintenance, LLC; Cape Fear Aviation Services, LLC; Cape Fear Aviation Fayetteville, LLC; Scot Smith; Roger Dale Smith; Cynthia B. Smith; and Jacob "Jake" Parsons (collectively "Cape Fear defendants") were fraudulently joined and thus

2

could be disregarded for jurisdictional purposes. Amongst the remaining parties, defendant Travelers asserted there was complete diversity and the requirements of 28 U.S.C. § 1332 were thus satisfied.

Plaintiff filed the instant motion remand the case December 10, 2021, on the basis that the Cape Fear defendants were not fraudulently joined and complete diversity was accordingly lacking. Shortly thereafter, defendant EDSI filed its instant motion to remand, relying upon the sworn written testimony of Robert Dancer, on the basis that defendant Travelers had not sought its consent for removal and EDSI has the power to veto removal as a co-defendant. Defendant Travelers filed the instant motion to realign the parties and motion to dismiss plaintiff's complaint for failure to state a claim.

Defendant EDSI filed its answer December 29, 2021, and asserted a crossclaim against defendant Travelers for judgment declaring defendant Travelers owes EDSI insurance coverage. Defendant Travelers subsequently moved to dismiss defendant EDSI's counterclaim with reliance upon an email exchange between counsel.

Also pending in this Court is a separate declaratory judgment action filed by defendant Travelers against defendant EDSI seeking declaration that it does not owe coverage to EDSI. See Case No. 5:21-CV-468-FL.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Dominique D. Northcutt ("Northcutt") attended an "aviation career day" at Gray's Creek Airport on February 17, 2020. (Compl. (DE 1-1) ¶¶ 22, 25). The career day was a "partnership or joint enterprise" between defendant EDSI, the Cape Fear defendants, and others not party to this action. (Id. ¶ 25). As part of the career day activities, Northcutt was flown in an airplane owned and operated by the Cape

3

Fear defendants. (Id. ¶ 23). That airplane crashed, and Northcutt suffered a traumatic brain injury so severe that she has since been declared incompetent. (Id.).

Prior to that accident, defendant Travelers issued an "Excess Follow-Form and Umbrella Liability Insurance Policy" (hereinafter, the "insurance policy") to defendant EDSI. (Id. ¶ 32). Plaintiff asserts that policy provides coverage to EDSI for the injuries sustained by Northcutt and has demanded that Travelers tender such coverage in settlement of the underlying tort action. (Id. ¶¶ 32-34).

## COURT'S DISCUSSION

A.    Motions to Remand and to Realign the Parties

1.    Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).[1] "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Id. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

2.    Analysis

In its notice of removal, defendant Travelers invoked the court's diversity jurisdiction. This court has diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

---

[1]    Internal citations and quotation marks are omitted from all citations unless otherwise specified.

States[.]" 28 U.S.C. § 1332(a)(1). "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). A corporation is a citizen of the state in which it is incorporated and of the state in which it maintains its principal place of business. See 28 U.S.C. § 1332(c)(1); Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010).

Plaintiff and the Cape Fear defendants are all citizen of North Carolina, (see Compl. (DE 1-1) ¶¶ 6,8; Not. of Rem. (DE 1) ¶¶ 9, 12), and thus, complete diversity is lacking. Defendant Travelers argues, however, that the citizenship of Cape Fear defendants must be disregarded for diversity purposes because they were fraudulently joined in this action. Defendant EDSI urges remand on the basis that it did not consent to removal, to which defendant Travelers counters that defendant EDSI, citizen of Michigan, (see Compl. (DE 1-1) ¶ 15; Not. of Rem. (DE 1) ¶ 11), must instead be realigned as a plaintiff. The court considers these arguments in turn below.

a.      Fraudulent Joinder

Defendant Travelers argues there is no possibility that plaintiff can establish a cause of action against the Cape Fear defendants and thus they were fraudulently joined. The court agrees.

"[T]he fraudulent joinder doctrine provides that diversity jurisdiction is not automatically defeated by naming non-diverse defendants." Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015). The doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015).

Invocation of the fraudulent joinder doctrine is appropriate only where "there is <u>no</u> <u>possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or . . . there has been outright fraud in the plaintiff's pleading of jurisdictional facts. <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232-33 (4th Cir. 1993) (emphasis in original). "[U]ltimate success is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 426 (4th Cir. 1999).

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." <u>Id.</u> at 424. "In order to determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." <u>AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.</u>, 903 F.2d 1000, 1004 (4th Cir. 1990).

Defendant Travelers contends that plaintiff cannot maintain a breach of contract claim against the Cape Fear defendants because neither plaintiff nor the Cape Fear defendants are a party to the insurance policy. According to the complaint, the insurance policy is between defendant Travelers, the insurer, and defendant EDSI, the insured. Plaintiff hopes to benefit from the policy as guardian ad litem to an individual allegedly injured by EDSI. According to plaintiff, the Cape Fear defendants similarly hope to benefit from the policy, should plaintiff win the underlying state tort suit, as they would then be jointly and severally liable with EDSI to plaintiff. Plaintiff does not allege that the Cape Fear defendants also maintain an insurance policy with defendant Travelers.

6

Neither North Carolina nor Michigan law[2] support a claim for declaratory judgment adjudicating the rights under an insurance policy brought by an injured person not named in the policy against defendants also not named in the policy. See Schmalfeldt v. North Pointe Ins. Co., 469 Mich. 422, 427 (2003); Vogel v. Reed Supply Co., 277 N.C. 119, 126, 177 S.E.2d 273, 277 (1970). While it is a closer call whether an injured party may bring such a claim against a party to the contract, an issue considered below in relation to defendant Travelers, there is no such ambiguity for one brought against parties that are not. That is particularly true where, as here, the interests of those parties are likely not adverse to plaintiff's. See Lansing Sch. Educ. Ass'n v. Lansing Bd. of Educ., 487 Mich. 349, 372 n.20 (2010) ("[T]he essential requirement of the term 'actual controversy' under the rule is that plaintiffs plead and prove facts which indicate an adverse interest necessitating the sharpening of the issues raised."); Malloy v. Cooper, 356 N.C. 113, 116 (2002) ("[J]urisdiction under the Declaratory Judgment Act may be invoked only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute."). Accordingly, there is "no possibility" that plaintiff will be able to establish a cause of action arising out of the insurance policy against the Cape Fear defendants, and they are thus fraudulently joined. Marshall, 6 F.3d at 232-33.

Plaintiff's arguments to the contrary are unavailing. Plaintiff refers to Storr Office Supply Div., Div. of Storr Office Env'ts v. Radar Business Systems-Raleigh, 832 F. Supp. 154 (E.D.N.C. 1993), asserting that, as in that case, the court should find that the Cape Fear defendants were not fraudulently joined. The court in Store Office Supply, however, considered a question not relevant

---

[2]      According to defendant Travelers the insurance policy was issued and delivered to EDSI at its address in Dearborn, Michigan. and thus defendant Travelers asserts that, under North Carolina choice of law, Michigan substantive law applies. (Def. Travelers's Mem. Supp. Mot. Dismiss (DE 17) at 3 (citing Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000))). Plaintiff, however, relies primarily on North Carolina law in his accompanying memorandums. (See, e.g., Pl. Mem. Supp. Mot. Remand (DE13)). As neither party asserts that the law of either state is materially different with respect to the issues in question, the court does engage in a choice of law analysis at this juncture.

7

here, namely whether "an inactive corporation without meaningful assets and/or liabilities at the time the complaint and petition for removal were filed, is a nominal party fraudulently joined so as to destroy diversity jurisdiction." Id. at 157. Store Office Supply is accordingly readily distinguishable.

Additionally, plaintiff argues that the Cape Fear defendants are "real part[ies] in interest," defined as parties who "benefited or [were] injured by the judgment in the case and who by substantive law ha[ve] the legal right to enforce the claim in question." (Pl. Mem. Supp. Mot. Rem. (DE 13) at 5 (quoting Carolina First Nat'l Bank v. Douglas Gallery of Homes, 68 N.C. App. 246, 249 (1984))). Plaintiff asserts that "[e]ach of the defendants, who are alleged to be jointly and severally liable to the plaintiff in the underlying tort action[] would be 'benefited or injured by the judgment' in this case determining the amount of insurance coverage available to defendant EDSI." (Id.). Under Michigan and North Carolina law, however, merely suffering harm or benefitting from a contract does not confer a legal right under the contract. See Greenlees v. Owen Ames Kimball Co., 340 Mich. 670, 676 (1954) ("A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof."); Matternes v. City of Winston-Salem, 286 N.C. 1, 13 (1974) (same). Further, the real party in interest inquiry is reserved for plaintiffs, and thus is not determinative of whether a defendant was fraudulently joined. See N.C. R. Civ. P. Rule 17(a) ("Every claim shall be prosecuted in the name of the real party in interest." (emphasis added)); Parnell v. Nationwide Mut. Ins. Co., 263 N.C. 445, 448 (1965) (looking to the plaintiff).

Finally, plaintiff argues that defendant Travelers's notice of removal is defective as "it fails to even allege that there is no possible state court cause of action against [the Cape Fear defendants]." (Pl. Mem. Supp. Mot. Rem. (DE 13) at 3). Plaintiff does not cite to a source for this

8

requirement, however, and the court finds none under 28 U.S.C. § 1446, which requires only "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Defendant Travelers satisfied that requirement by invoking the court's diversity jurisdiction and setting out how its requirements were met, including Travelers's contention that the non-diverse Cape Fear defendants were fraudulently joined. (Not. of Rem. (DE 1) ¶ 12).

In sum, as there is "no possibility" that plaintiff will be able to establish a cause of action under the insurance policy against the Cape Fear defendants, the court finds they were fraudulently joined. The court accordingly disregards their citizenship for diversity purposes and dismisses them from the action. See Johnson, 781 F.3d at 704. As plaintiff is a citizen of North Carolina, defendant EDSI is a citizen of Michigan, and defendant Travelers is a citizen of Connecticut, there is complete diversity among the parties and diversity jurisdiction is proper. Plaintiff's motion to remand is accordingly denied.[3]

> b.      Consent to Removal and Realignment of Parties

Defendant EDSI argues that remand is nevertheless appropriate as it does not consent to removal and can accordingly "veto" it. (EDSI Mem. Supp. Mot. Rem. (DE 19) at 2). Section 1446(b) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b). "The Supreme Court has construed [§ 1446(b)] to include a 'unanimity requirement,' such that all defendants must consent to removal." Mayo v. Bd. of Educ. of Prince George's Cty., 713 F.3d 735, 741 (4th Cir. 2013). It is undisputed that defendant EDSI had not been served at the time of removal, and thus § 1446(b) is

---

[3]      Plaintiff argues additionally that even if there is complete diversity, the court should nevertheless decline to exercise jurisdiction to avoid "unnecessary entanglement between the federal and state court systems because of overlapping issues of fact or law between the underlying tort action and the declaratory judgment action." (Pl. Mem. Supp. Mot. Remand (DE 13) at 7). To the extent there is an entanglement, however, it is presently unavoidable as identical overlaps of fact and law already exist in related case Travelers v. EDSI, 5:21-CV-468, filed before this court. There, defendant Travelers also seeks declaratory relief to construe the insurance policy in issue.

not squarely applicable.  Section 1448, however, adds that "any defendant upon whom process is served after removal" has the right to move to remand the case.  28 U.S.C. § 1448.  Defendant EDSI asserts this latter provision permits a later-served defendant to challenge "removal and defeat or 'veto' [it] by refusing to consent to removal as one of the co-defendants." (EDSI Mem. Supp. Mot. Rem. (DE 19) at 2).  Defendant Travelers, however, contends that EDSI should be realigned as plaintiff, thereby negating any need for EDSI's consent to removal.  The court agrees.

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." City of Indianapolis v. Chase Nat. Bank of City of New York, 314 U.S. 63, 69 (1941).  Conversely, "parties [also] cannot avoid diversity by their designation of the parties." City of Vestavia Hills v. Gen. Fid. Ins. Co., 676 F.3d 1310, 1313 (11th Cir. 2012) (emphasis in original); see Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120 (4th Cir. 2004).  Rather, it is the duty of a federal court "to look beyond the pleadings[] and arrange the parties according to their sides in the dispute." City of Indianapolis, 314 U.S. at 69.

Courts in the Fourth Circuit apply the "principal purpose" test to identify plaintiffs and defendants for purposes of removal: "First, we determine the primary issue in controversy, and then we align the parties according to their positions with respect to the primary issue." Palisades Collections LLC v. Shorts, 552 F.3d 327, 337 (4th Cir. 2008).  The primary purpose of a suit is determined "by the pleadings and the nature of the controversy," id. at 134, although courts also may "look beyond the pleadings [to] arrange the parties according to their sides in the dispute." City of Indianapolis, 314 U.S. at 69 ("[Alignment] is therefore not to be determined by mechanical rules.  It must be ascertained from the principal purpose of the suit.").  After aligning the parties, "[i]f the alignment differs from that in plaintiff's complaint, we look to whether diversity

10

jurisdiction still exists." Builders Mut. Ins. Co. v. Dragas Mgmt. Corp., 497 F. App'x 313, 316 (4th Cir. 2012); see also Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156 (3d Cir.1995) ("[W]here party designations have jurisdictional consequences, [the court] must align the parties before determining jurisdiction."); see, e.g., Lott v. Scottsdale Ins. Co., 811 F. Supp. 2d 1220, 1223 (E.D. Va. 2011) (noting that "defendants are not required to consent to removal given the realignment [of the] defendants as plaintiffs for jurisdictional purposes").

Here, the primary issue in plaintiff's declaratory judgment action is whether defendant Travelers has a duty to defend and indemnify EDSI for the claims asserted by plaintiff in the underlying tort action. On this issue, EDSI's interests are more closely aligned with plaintiff's than with defendant Travelers's. As EDSI faces liability to plaintiff in the underlying tort action, it has a substantial interest in establishing that defendant Travelers has a duty to defend and indemnify it. Accordingly, EDSI is better situated in this action as a plaintiff. See U.S. Fid. & Guar. Co. v. A & S Mfg. Co., 48 F.3d 131, 134 (4th Cir. 1995) (aligning parties based on the insurers' "primary goal of avoiding obligations"); see also Home Ins. Co. of Ill. v. Adco Oil Co., 154 F.3d 739, 741 (7th Cir. 1998) ("[T]he normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party."); Evanston Ins. Co. v. Hous. Auth. of Somerset, 867 F.3d 653, 656 (6th Cir. 2017) (same); City of Vestavia Hills v. Gen. Fid. Ins. Co., 676 F.3d 1310, 1314 (11th Cir. 2012) (same).[4]

In sum, as only defendant Travelers has an interest in proving that it has no duty to defend and indemnify EDSI, all other parties to this action are realigned as plaintiffs.

---

[4]    Likewise, the Cape Fear defendants, who as noted may be jointly and severally liable against plaintiff in the underlying tort action, have an interest in establishing that defendant Travelers has a duty to defend and indemnify EDSI so as to increase recovery against EDSI, which may otherwise have insufficient funds to cover a judgment. Thus, in addition to being fraudulently joined, the Cape Fear defendants are also properly realigned as plaintiffs, thereby also creating complete diversity.

11

Defendant EDSI does not dispute that under the principal purpose test the parties may be realigned leaving "Travelers on the opposite side of the proverbial 'v' with all other parties." (EDSI Resp. to Travelers's Mot. Realign (DE 32) at 1). Rather, EDSI argues that the motion is untimely as the notice of removal makes no mention of the need to realign EDSI, asserting instead that EDSI is diverse from the named plaintiff. In effect, EDSI contends that defendant Travelers's realignment argument is a new allegation of a jurisdictional basis barred by 28 U.S.C § 1446 and § 1653 because it effectively seeks to amend the notice of removal after the 30-day deadline.

The United States Court of Appeals for the Fourth Circuit has distinguished between "new allegations of a jurisdictional basis" from cases where "amendment is appropriate for technical changes, such as the exact grounds underlying diversity jurisdiction." Wood v. Crane Co., 764 F.3d 316, 323 (4th Cir. 2014) (emphasis added). While courts "have no discretion to permit amendments furnishing new allegations of a jurisdictional basis" after 30 days, they do have discretion "to permit amendments that correct allegations already present in the notice of removal." Id. For instance, in Yarnevic v. Brink's, Inc., 102 F.3d 753 (4th Cir.1996), the original petition for removal cited diversity jurisdiction and listed the plaintiff's domicile as Ohio, though he had moved to Pennsylvania after filing his complaint. Id. at 754. Both states supported a finding of diversity jurisdiction. Id. at 755. The court concluded that "[w]hile it would have been prudent for [the defendant] to file a supplemental petition specifying the new basis for diversity within 30 days . . . it was not required" as complete diversity existed either way. Id.

Similarly, as the Cape Fear defendants were fraudulently joined, which defendant Travelers did include within its notice of removal, complete diversity existed here whether EDSI was a defendant or realigned as a plaintiff. Thus, while it would have been "prudent" for defendant

12

Travelers to file a supplemental petition specifying realignment as a basis for diversity within 30 days, "it was not required." Id.

Defendant Travelers's motion to realign the parties is accordingly granted. As EDSI is realigned as a plaintiff for jurisdictional purposes, its motion to remand on the basis of its lack of consent is denied as moot.

B.      Motion to Dismiss Plaintiff's Complaint

1.      Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.   In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd.  v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

2.      Analysis

Defendant Travelers asserts plaintiff's claim must be dismissed as he lacks standing to have the insurance policy construed under applicable Michigan and North Carolina statutes.  The court agrees.

The Fourth Circuit has distinguished between constitutional standing, prudential standing, and statutory standing.  CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 52 (4th

13

Cir. 2011). "To possess constitutional standing, a plaintiff must be injured by the defendant, and a federal court must be able to redress the injury." Id. Prudential standing

> encompasses several judicially-created limits on federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

Id.

Meanwhile, statutory standing "is perhaps best understood as not even standing at all." Id. "Statutory standing applies only to legislatively-created causes of action and concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." Id. Thus, while "[c]onstitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing. . . . [s]tatutory standing is simply statutory interpretation." Id. Thus, "typically, a dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim." CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 52 (4th Cir. 2011); see Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co., 757 F. App'x 229, 232 n.1 (4th Cir. 2018) (noting the district court, which found a lack of Article III standing where plaintiff was not a party to the insurance contract under Virginia law, should instead have framed the issue as a failure to state a claim for breach of contract).

Here, that part of plaintiff's claim against defendant Travelers seeks declaratory judgment adjudicating Traveler's obligation under the insurance policy to defend and indemnify EDSI for the claims asserted by plaintiff in the underlying tort action. Defendant Travelers argues that under both Michigan and North Carolina law, plaintiff, a mere an incidental beneficiary under the insurance policy, lacks the substantive right to initiate litigation over whether coverage existed. The court has already determined that plaintiff cannot establish a cause of action arising out of the

14

insurance policy against the Cape Fear defendants, who are not party to the insurance policy. The court now considers whether plaintiff can establish such action against defendant Travelers, the insurer.

Under Michigan law, "only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor." Schmalfeldt v. North Pointe Ins. Co., 469 Mich. 422, 427 (2003). Third-party beneficiaries are defined by statute, pursuant to which the Michigan Supreme Court has concluded that an injured person not named in an insurance contract is not a third-party beneficiary to the contract. Id. Rather, he is merely an incidental beneficiary. Id. In Schmalfeldt, for instance, the court concluded that a patron who allegedly suffered dental injuries during a bar fight was only an incidental beneficiary of the commercial liability insurance policy between the bar and its insurance carrier as he was not named within it. Id. at 429. The patron accordingly had no right to sue the carrier for medical payment under the policy. See id. ("Nothing in the insurance policy specifically designates Schmalfeldt, or the class of business patrons of the insured of which he was one, as an intended third-party beneficiary of the medical benefits provision. At best, the policy recognizes the possibility of some incidental benefit to [him]."). Plaintiff does not allege that he was named in the insurance policy. He accordingly lacks standing to bring a claim for breach of contract under it.

Whether plaintiff can bring a claim for declaratory judgment, however, is a separate question. The Michigan Supreme Court has held that an injured party has standing to continue an action for a declaration of insurance coverage where both the insured and the injured party were named by the insurer as defendants in the action. Allstate Ins. Co. v. Hayes, 442 Mich. 56, 69 (1993). In Allstate Ins. Co., Allstate filed a motion for summary disposition and argued that the default of the insured party deprived the injured party of standing. Id. at 59. The court concluded

15

that as Allstate had named the injured party in the action, it had "consented to a determination of

the coverage question. Allstate cannot complain about that determination on the basis of a lack of

standing." Id. The court, however, expressly declined to reach the issue of whether an injured

party has a "vested" interest, from the time of the injury, that would permit it to bring its own

action for declaratory relief. Id. at 63. While the Michigan Supreme Court has not since revisited

that particular question, lower courts addressing the issue have concluded an injured party cannot.

See, e.g., Schafer Oil Co. v. Universal Underwriters Ins. Co., 820 F. Supp. 321, 324-25 (E.D.

Mich. 1993).

Thus, the case law in Michigan does not presently afford an injured party such as plaintiff

a "vested" right to bring a direct claim for declaratory relief under a contract to which he is not a

party, and it is not for this court to extend the law in Michigan to create such an interest. See

Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992) ("Absent a strong countervailing federal

interest, the federal court . . . should not elbow its way into this controversy to render what may be

an uncertain and ephemeral interpretation of state law."). Accordingly, the court finds plaintiff

lacks statutory standing to bring this declaratory judgment action under Michigan law.

Turning, then, to North Carolina law, the North Carolina Supreme Court has similarly held

that "[i]f the contract was not made for the benefit of the third party, he has no cause of action

upon the contract to enforce it, or sue for its breach." Vogel v. Reed Supply Co., 277 N.C. 119,

126 (1970). "The intention of the parties to the contract determines whether the plaintiff is a mere

incidental beneficiary thereof." Matternes v. City of Winston-Salem, 286 N.C. 1, 13, 209 S.E.2d

481, 487-88 (1974). "A third person cannot maintain an action upon a simple contract merely

because he would receive a benefit from its performance or because he is injured by the breach

16

thereof." Id. at 488.  Rather, the "real test" is "whether the contracting parties intended that a third

person should receive a benefit which might be enforced in the courts."  Vogel, 277 N.C. at 128.

N.C. Gen. Stat. § 1–254 sets forth the following criteria as to what persons are entitled to

declaratory relief:

> Any person <u>interested under</u> a deed, will, written contract or other writings
> constituting a contract, <u>or whose rights, status or other legal relations are affected
> by</u> a statute, municipal ordinance, contract or franchise, may have determined any
> question of construction or validity arising under the instrument, statute, ordinance,
> contract, or franchise, and obtain a declaration of rights, status, or other legal
> relations thereunder.

Id. (emphasis added).  Construing this statute, the North Carolina Supreme Court has concluded

that courts can "render a declaratory judgment only when the pleadings and evidence disclose the

existence of a genuine controversy between the parties to the action, arising out of conflicting

contentions as to their respective legal rights and liabilities under a deed, will, contract, statute,

ordinance, or franchise."  Nationwide Mut. Ins. Co. v. Roberts, 261 N.C. 285, 287 (1964).  Thus,

to seek a declaratory judgment, a party must have "rights and liabilities" under the contract.  Id.

Lower courts have accordingly held that without being parties to the contract at issue or

having some other legally enforceable right under it incidental beneficiaries lack standing to have

the insurance contract construed.  See Whittaker v. Furniture Factory Outlet Shops, 145 N.C. App.

169, 173 (2001); Terrell v. Lawyers Mut. Liab. Ins. Co., 131 N.C.App. 655, 661 (1998) ("Absent

an enforceable contract right, an action for declaratory relief to construe or apply a contract will

not lie.").  For instance, in DeMent v. Nationwide Mutual Ins. Co., 142 N.C. App. 598 (2001) the

court concluded that an automobile accident victim could not bring an action directly against the

tort-feasor's liability insurer for a declaratory judgment because his general claim of entitlement

was merely incidental to the insurance policy, and his claim against the insured tort-feasor had not

been established as an enforceable contractual right.  Id. at 601.

17

Plaintiff Hart does not allege he is a party to the insurance policy or that he otherwise has an enforceable right, such as a judgment against EDSI, under it. He accordingly lacks statutory standing under North Carolina law to bring an action for declaratory relief to construe the policy.

As on the facts alleged plaintiff Hart lacks statutory standing to bring this declaratory judgment action under both North Carolina and Michigan law, the court grants defendant Travelers's motion to dismiss the complaint.

C.      Motion to Dismiss EDSI's Counterclaim

Still remaining, however, is EDSI's counterclaim for declaratory judgment. It is uncontested that EDSI's claim raises identical issues to those raised by Travelers in its complaint and EDSI in its counterclaim in another case also before this court, case number 5:21-CV-468-FL. Defendant Travelers asserts that EDSI's duplicative counterclaim should accordingly be dismissed under the first-to-file rule.

The first-to-file rule applies in cases where, as here, "a prior suit [is] pending in which all issues could be tried with equal facility." Carbide & Carbon Chemicals Corp. v. U.S. Indus. Chemicals, 140 F.2d 47, 49 (4th Cir. 1944); see Remington Prod. Corp. v. Am. Aerovap, 192 F.2d 872, 873 (2d Cir. 1951) (applying rule to first-filed case where "[a]ll the issues are, or can be, there joined"). Under it, the "first suit should have priority, absent the showing of balance of convenience in favor of the second action." Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n. 2 (4th Cir. 1974). For "[o]rdinarily, the court first acquiring jurisdiction of a controversy should be allowed to proceed with it without interference from other courts under suits subsequently instituted." Carbide & Carbon Chemicals Corp., 140 F.2d at 49. Where applicable, under the first-to-file rule the court may in its discretion consolidate the actions or otherwise dismiss the redundant action. See id.

18

Travelers contends it commenced case number 5:21-CV-468-FL before EDSI filed its counterclaim in the instant action, and thus 5:21-CV-468-FL has priority. Given that both cases are before the undersigned EDSI asserts that it is "irrelevant . . . whether the EDSI/ Travelers dispute is adjudicated within the 21-cv[-]466 or 21-cv[-]468 case." (EDSI Resp. to Mot. to Dismiss Counterclaim (DE 34) at 2).

As EDSI expresses no position on which of the two cases before this court should become the operative case, the court determines that, consistent with defendant Travelers's motion, case number 5:21-CV-468-FL shall be the operative case. Therefore, the instant motion is granted, and EDSI's counterclaim in the instant case is dismissed without prejudice as duplicative of the complaint and counterclaim in the 5:21-CV-468-FL action. Where all claims in the instant case have now been dismissed, the instant action properly now is closed in favor of further proceedings in the 5:21-CV-468-FL action. Defendants Travelers and EDSI are directed to file a joint report in the operative 5:21-CV-468-FL action, within 14 day of the date of this order, indicating whether any filings from the instant action should be re-filed therein.

## CONCLUSION

Based on the foregoing, defendant Travelers's motions to dismiss the complaint (DE 16) and realign the parties (DE 24) are GRANTED. Plaintiff's and EDSI's motions to remand (DE 12, 18) are DENIED. Defendant Travelers's motion to dismiss defendant EDSI's counterclaim (DE29) is GRANTED on the terms set forth herein. Plaintiff's claim is DISMISSED, and defendant EDSI's counterclaim is DISMISSED WITHOUT PREJUDICE in favor of adjudication of the same issues in the operative 5:21-CV-468-FL action. EDSI and defendant Travelers are DIRECTED to file a status report in that action, as set forth herein, within 14 days of the date of this order. The clerk is DIRECTED to close this case.

SO ORDERED, this the 8th day of July, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge